# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LESTER DOBBEY (R-16237), ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 11-CV-0146 |
| ) | |
| MICHAEL P. RANDLE, MARCUS HARDY, ) | Judge Robert M. Dow, Jr. |
| ANTHONY RAMOS, MARGARET THOMAS, ) | |
| NORMAN PATTERSON, JOHN OR JANE DOE, ) | |
| JACKIE MILLER, AND IDOC, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

*Pro se* Plaintiff Lester Dobbey, a Stateville Correctional Center inmate, has brought a civil rights suit pursuant to 42 U.S.C. § 1983 alleging deliberate indifference to his objectively serious medical condition. He claims that he experienced painful, unnecessary headaches because he did not have his eyeglasses for several months. Before the Court are Plaintiff's motion for summary judgment [130] and Defendants Michael P. Randle, Marcus Hardy, Anthony Ramos, Margaret Thomas, and Jackie Miller's cross motion for summary judgment [134]. For the reasons set forth below, Plaintiff's motion is denied, and Defendants' motion is granted.

**I.  Background**

On cross motions for summary judgment, the Court construes all facts and inferences "in favor of the party against whom the motion under consideration is made." *In re United Air Lines, Inc.*, 453 F.3d 463, 468 (7th Cir. 2006) (quoting *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 536 (7th Cir. 2005)); see also *Gross v. PPG Indus., Inc.*, 636 F.3d 884, 888 (7th Cir. 2011); *Foley v. City of Lafayette, Ind.*, 359 F.3d 925, 928 (7th Cir. 2004).

Plaintiff was placed in segregation at Stateville on September 2, 2009. [131] at 3; [136] at 2. He was not allowed to bring his eyeglasses with him into segregation. [136] at 2. The parties agree that Plaintiff wears prescription eyeglasses that were prescribed for him by optometrist Dr. Norman Patterson. [130] at 37-39; [136] at 2-3. Plaintiff claims that he experienced a number of headaches because he did not have access to his glasses while in segregation for several months. [136-4] at 6. Plaintiff received a second eye examination from Dr. Patterson on May 18, 2010, and obtained a new pair of prescription glasses on July 6, 2010. [130] at 51, 58-60, 68. The record does not detail what happened to Plaintiff's original pair of glasses.

Plaintiff's original examination by Dr. Patterson (during which he was prescribed the glasses that he could not bring with him into segregation) occurred on August 22, 2007. [130] at 37. Plaintiff asserts that Dr. Patterson told him during this exam that (1) he had astigmatism and (2) the glasses would correct the condition. [130] at 1. Defendants are correct that Plaintiff's exhibits (his eye exam record and affidavit from Dr. Patterson) [130] at 37-39, 67-71, do not mention astigmatism. [140] at 3. Regardless, the question of whether Plaintiff suffers from astigmatism does not create a genuine issue of material fact. The record shows that Plaintiff had uncorrected vision of 20/40 at the time of his exam in August 2007. [130] at 37. More fundamentally, Plaintiff's case focuses on the migraine headaches and blurred vision that he claims to have experienced as a result of not having his glasses while in segregation for a several month period. [136-4] at 6, 72. He does not claim that he was blind or otherwise prevented from reading or writing. To the contrary, Plaintiff claims that he wrote a number of requests for medical assistance while lacking his glasses. *Id*.

Dr. Patterson initially was a Defendant in this action, but he reached a settlement with Plaintiff while the case was in the discovery phase. See [95]. Patterson works as a part-time contractor and states that his sole task at Stateville is to provide eye exams to inmates. [130] at 67. Dr. Patterson asserts that he is not involved with the scheduling of appointments or handling any inmate requests. *Id*. He simply shows up at Stateville on his appointed day, and conducts any eye exams scheduled by Stateville officials and/or other doctors at Stateville. *Id*. Dr. Patterson furnishes completed prescriptions to Stateville staff, who forward them onto the Dixon Correctional Center, where a unit called "prison industries" produces the glasses. [130] at 60, 67.

Plaintiff asserts that between September 3, 2009, and October 8, 2009, he submitted approximately ten medical request slips seeking medical attention on the ground that he did not have his glasses and was experiencing painful headaches behind his eyes. [130] at 2, 40. He also claims to have submitted a total of 60 medical request slips while in segregation (also known as F-House), and later in B-House, between September 3, 2009, and May 2010. [130] at 48. Plaintiff explains that the slips were submitted to a medical request box located in his housing unit. *Id*. Plaintiff's affidavits state that these request slips were addressed to Dr. Patterson and Stateville medical staff. [130] at 48.

Defendants Michael P. Randle, Marcus Hardy, Anthony Ramos, Margaret Thomas, and Jackie Miller (the Defendants who have moved for summary judgment) are non-medical Illinois Department of Corrections (IDOC) officials. As non-medical officials, they do not answer medical request slips, and do not schedule inmates for medical care. [136-2] at 3. As mentioned above, Dr. Patterson claims that he, too, was not responsible for answering the 60 medical slips because his only task was to perform eye exams that already had been scheduled by Stateville

medical staff. Any dispute over Dr. Patterson's responsibilities has been mooted by the previously reached settlement with Plaintiff. Thus, the only conceivable Defendant(s) involved with answering the 60 medical slips would be members of the medical staff at Stateville.

Plaintiff named the Stateville medical staff as John or Jane Does. The Court's original review of the complaint under 28 U.S.C. § 1915A noted the naming of the John or Jane Does and reminded Plaintiff that he needed to identify these individuals and submit an amended complaint. [4]at 2. Plaintiff failed to identify the Does. There are no named and served medical staff in the case as Defendants.

Turning to non-medical Defendants Randle, Hardy, Ramos, Thomas, and Miller, their involvement is with Plaintiff's formal grievance dated October 8, 2009. [136-5] at 2. The grievance raises issue of Plaintiff's lack of glasses (along with an unrelated back pain issue not raised in this case). [136-5] at 4. It explains the issues of Plaintiff's transfer to segregation, his lack of glasses (Plaintiff states on the grievance that he believes his original glasses were lost when he transferred to segregation), his headaches, and his desire to be examined by an optometrist. See *id.*

The Illinois Department of Corrections (IDOC) has a formal process for answering grievances. The first step in the process is for a prisoner to submit an informal grievance to the prisoner's counselor at the prison. [136-3] at 2; *Dole v. Chandler*, 438 F.3d 804, 807 (7th Cir. 2006) (citing Ill. Admin. Code tit. 20, § 504.810(a)). If this is unsuccessful in resolving the issue, the prisoner may submit a formal written grievance to the prison grievance officer. [136-3] at 2; *Dole*, 438 F.3d at 807 (citing Ill. Admin. Code tit. 20, §§ 504.810(a), (b)). The grievance officer has the authority to investigate the grievance, including interviewing the prisoner and

witnesses and reviewing relevant documents. [136-3] at 2-3; *Dole*, 438 F.3d at 807 (citing Ill. Admin. Code tit. 20, § 504.810). The grievance officer then submits a recommendation to the warden, who makes the final decision at the institutional level. [136-3] at 2; *Dole*, 438 F.3d at 807.

A prisoner may appeal a warden's determination to the Director of the Illinois Department of Corrections via the Administrative Review Board (ARB). *Dole*, 438 F.3d at 807 (citing Ill. Admin. Code tit. 20, § 504.850(a)). The regulatory scheme refers all appeals to the ARB, which makes a recommendation to the Director. The Director, in turn, makes the final decision in the appeals process. *Dole*, 438 F.3d at 807 (citing Ill. Admin. Code tit. 20, § 504.870(a)(3)).

There is also expedited review for emergency situations. A prisoner may file an emergency grievance directly with the warden of his institution. *Fletcher v. Menard Corr. Ctr.*, 623 F.3d 1171, 1174 (7th Cir. 2010) (citing Ill. Admin. Code tit. 20, § 504.840). The warden determines whether "'there is a substantial risk of imminent personal injury or other serious or irreparable harm' to the inmate." *Id*. (quoting Ill. Admin. Code tit 20, § 504.840(a)). If the matter is deemed an emergency, the grievance is handled on an emergency basis. *Id*. (citing Ill. Admin. Code tit 20, § 504.840(b)). If not, the grievance is returned so that the inmate may begin the normal grievance process. [136-3] at 2.

Plaintiff claimed that his situation was an emergency and submitted the grievance directly to the Stateville Warden (at that time, Defendant Anthony Ramos). [136] at 2. (Ramos left Stateville in November 2009 and was replaced by Defendant Marcus Hardy). *Id*. Ramos

disagreed and returned the grievance for processing through the normal procedures. *Id*. Ramos also noted that Plaintiff had been seen by health care professionals in October 2009.

Plaintiff's grievance was returned to the beginning of the grievance process. Plaintiff's counselor responded to the grievance that Plaintiff had been seen for his other medical concerns in October 2009, and that he did not mention the headaches or a need for glasses at that time. [136] at 3. Plaintiff then appealed to his grievance officer, Defendant Thompson. Thompson investigated the issue and determined that the counselor had properly handled the issue, instructed Plaintiff to request an optometry appointment, and noted a backlog for optometry appointments. *Id*. Plaintiff then appealed to Warden Hardy (who had by had succeeded Warden Ramos). Hardy agreed with Thompson's resolution of the grievance. *Id*.

Plaintiff then appealed to the ARB, where Defendant Miller also explained to Plaintiff that he needed to submit a request for an optometry appointment. *Id*. The grievance ultimately was reviewed by Defendant IDOC Director Randle's designee, who also concurred with the resolution of the grievance. *Id*.

## II. Analysis

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Wackett v. City of Beaver Dam, Wis.*, 642 F.3d 578, 581 (7th Cir. 2011). The Court may not weigh conflicting evidence or make credibility determinations, but the party opposing summary judgment must point to evidence demonstrating a genuine dispute of material fact. *Omnicare, Inc. v. UnitedHealth Group, Inc.*, 629 F.3d 697, 705 (7th Cir. 2011) (citations omitted). The moving party has the initial burden of showing that there is no genuine dispute

and that he is entitled to judgment as a matter of law. *Carmichael v. Vill. of Palatine, Ill.*, 605 F.3d 451, 460 (7th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008)). If the moving party meets this burden, the non-moving party must respond with specific facts showing that the jury could find in his favor, and that there is a genuine dispute that needs to be adjudicated at trial. *Carmichael*, 605 F.3d at 460 (citing *Anderson*, 477 U.S. at 251-52; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Wheeler*, 539 F.3d at 634). A genuine dispute is one that could change the outcome of the suit, and contains evidence sufficient to allow a reasonable jury to return a favorable verdict for the non-moving party. *Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 822 (7th Cir. 2010) (citations omitted).

To succeed on a deliberate indifference claim, Plaintiff must prove that Defendants were intentionally indifferent to an objectively serious medical need or condition; negligence, gross negligence, or medical malpractice is insufficient. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008); *Guzman v. Sheahan*, 495 F.3d 852, 857 (7th Cir. 2007); *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007). Thus, Plaintiff's claim has objective and subjective elements. *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011). Plaintiff must show that (1) he had an objectively serious untreated medical need or condition and (2) Defendants "acted with a sufficiently culpable state of mind to support liability under § 1983." *Id.* (citations omitted).

Turning to the first element of an objectively serious medical condition, Plaintiff argues that as a result of the separation from his eyeglasses he experienced severe migraine headaches for several months. "An objectively serious medical need is 'one that has been diagnosed by a

physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012) (quoting *Zentmyer v. Kendall County*, 220 F.3d 805, 810 (7th Cir. 2000)). However, failure to treat minor conditions such as sniffles, minor aches, pains, tiny scratches or mild headaches — the type of ailments for which people outside of prison often do not seek medical attention — do not violate the Constitution. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 829 (7th Cir. 2009) (citations omitted).

The Court concludes that the absence of glasses did not constitute an objectively serious medical condition in the circumstances presented here by Plaintiff. Courts have determined that a lack of glasses results in an objectively serious medical condition when it significantly affects a prisoner's ability to see. Compare *Starks v. Powers*, No. 02 C 1252, 2006 WL 929359, at *5 (S.D. Ill. Apr. 10, 2006) (citing *Koehl v. Dalsheim*, 85 F.2d 86, 87 (2d Cir. 1996)) (severe double vision and loss of depth perception resulting in prisoner becoming almost sightless without glasses resulted in deliberate indifference claim); *Benter v. Peck*, 825 F. Supp. 1411, 1416-17 (S.D. Iowa 1993) (entering injunctive relief instructing that prisoner be given glasses when he was legally blind without them), with *Lavin v. Hulick*, No. 09 C 477, 2010 WL 2137250, at *6 (S.D. Ill. May 27, 2010) (concluding that depriving an inmate of eyeglasses for three weeks with the only resulting harm of being unable to read and no physical harm did not result in deliberate indifference). But the evidence here shows no such impairment. Specifically, there is no evidence that the lack of glasses severely impaired Plaintiff's ability to read, write, or see objects when walking. Indeed, Plaintiff's own recitation of the facts acknowledges that he was able to write 60 separate medical requests and one formal grievance while deprived of his glasses.

However, Plaintiff's associated migraine headaches do satisfy the objectively serious medical condition requirement. Exposure to prolonged and unnecessary pain, even for a few days, results in deliberate indifference. *Smith v. Knox County Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012) (per curiam) (citations omitted). Plaintiff is a competent witness to testify as to the severity of his pain, and he contends that his pain was significant and that he experienced it for many months. This is sufficient to establish a genuine issue of material fact as to whether Plaintiff had an objectively serious medical condition.

However, to withstand Defendants' summary judgment motion (or prevail on his own), Plaintiff also must satisfy the subjective requirement. In particular, he must show that Defendants engaged in more than mere negligence, and that their conduct approached intentional wrongdoing or criminal recklessness. *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (citing *Farmer*, 511 U.S. at 837). There is no evidence in the record to demonstrate that non-medical Defendants Randle, Hardy, Ramos, Thomas, and Miller were deliberately indifferent under this standard.

To the contrary, the record shows that the non-medical Defendants were involved only with a single formal grievance filed by Plaintiff in October 2009. These Defendants explained that they had no involvement with the alleged 60 medical request forms, and Plaintiff concedes that medical request forms were written to the medical staff. There is also no evidence to suggest that the non-medical Defendants had any knowledge (or any obligation to obtain knowledge) of the alleged 60 medical request forms. Thus, the Court only considers the one formal grievance handled by the non-medical Defendants.

Non-medical officials may be held liable for failing to correct mistreatment of prisoners when the alleged mistreatment comes to their attention through a grievance, *and* it is their duty to correct the mistreatment. *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) (internal quotation marks and citations omitted) ("[N]onmedical officials can be chargeable with deliberate indifference where they have reason to believe (or actual knowledge) that prison doctors or their assistants are misleading (or not treating) a prisoner. Non-medical defendants cannot simply ignore an inmate's plight."). However, non-medical defendants cannot be held liable if they have properly investigated the claim. *Arnett*, 658 F.3d at 755; *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). The question is whether they were deliberately indifferent in the performance of their duties. *Burks*, 555 F.3d at 595. Furthermore, an individual's status as a supervisor is not, by itself, a sufficient basis for liability because there is no *respondent superior* liability under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). An individual is only responsible for the harm that he or she personally inflicted on the prisoner. *Munson v. Gaetz*, 673 F.3d 630, 637 (7th Cir. 2012) (citations omitted).

The non-medical Defendants cannot be held deliberately indifferent under these controlling principles. Their involvement was limited to the one formal grievance that Plaintiff submitted. The grievance was properly processed and Plaintiff's complaints were investigated by the non-medical officials. The counselor and grievance officer both determined that Plaintiff had been seen by a doctor and instructed him to request an appointment to see the optometrist. The warden, ARB, and IDOC director designee reviewed this determination and found no fault in their findings.

Plaintiff concedes that his medical request forms were submitted to medical officials, not the non-medical Defendants. The record also shows that the non-medical officials were not notified of any issue regarding the alleged 60 unanswered medical request forms. Plaintiff's only grievance submitted to the non-medical officials was submitted in early October 2009. The record does not suggest that the non-medical officials had any independent duty to monitor the effectiveness of the medical request process.

Plaintiff suggests that the non-medical Defendants had a general duty to ensure that he received proper medical care. However, this is nothing more than the improper vicarious liability argument that Defendants are liable because they are ultimately in charge of the prisoner or IDOC. Plaintiff's medical care was the responsibility of the medical officials. *Burks*, 555 F.3d at 595 ("[T]he Superintendent of Prisons and the Warden of each prison is entitled to relegate to the prison's medical staff the provision of good medical care. That is equally true for an inmate complaint examiner.") (citations omitted).

The Court recognizes that Plaintiff claims to have suffered unnecessarily from painful headaches for over half a year. However, that problem stemmed from medical staff's alleged failure to address the 60 medical request forms that Plaintiff claims he submitted over a multiple month period. Plaintiff fails to present any evidence to demonstrate that the non-medical Defendants were deliberately indifferent in any manner.

Plaintiff already has settled with Dr. Patterson and he failed to identify and serve the John or Jane Doe medical staff. The Court cannot excuse Plaintiff's failure to name the Does at this stage in the proceedings. Any complaint naming a Doe Defendant in his or her actual name would likely be untimely as the events and associated grievances occurred more than three years

ago (beyond the two-year statute of limitations governing Plaintiff's claims). *Hall v. Norfolk Southern R.R. Co.*, 469 F.3d 590, 596 (7th Cir. 2006).

The fact that Plaintiff is p*ro se* does not excuse the situation. To begin with, the Court specifically warned him in the original screening order at the beginning of the case that he needed to identify the Does before the expiration of the statute of limitations. [4] at 2. The Court also explained that Plaintiff could conduct discovery on the named Defendants to identify the Does if he did not know their names. Plaintiff apparently did not perform the task, yet this is a task that well within his abilities. Plaintiff is also far beyond the ordinary *pro se* prisoner filer. His filings are very advanced. They reflect an understanding of legal concepts and strategy. In this case, Plaintiff brought motions for default, petitioned for discovery and scheduling orders, engaged in discovery and a settlement conference, and submitted numerous motions and briefs opposing motions. His filings show that he is extremely well versed in legal principles applicable to his cases.

In fact, this is one of several separate condition-of-confinement cases filed by Plaintiff that this Court has been assigned under this District's Local Rule 40.3(b) (N.D. Ill.). See *Dobbey v. Randle*, No. 10 C 3965 (N.D. Ill.); *Dobbey v. Randle*, No. 11 C 146 (N.D. Ill.); *Dobbey v. Zhang*, No. 11 C 2374 (N.D. Ill.); *Dobbey v. Randle*, No. 11 C 3000 (N.D. Ill.); *Dobbey v. Johnson*, No. 12 C 1461 (N.D. Ill.); *Dobbey v. Mitchell-Lawshea*, No. 12 C 1739 (N.D. Ill.); *Dobbey v. IDOC*, No. 12 C 9222 (N.D. Ill.) *Dobbey v. Carter*, No. 12 C 9223 (N.D. Ill.); *Dobbey v. Weilding*, No. 13 C 1068 (N.D. Ill.); *Dobbey v.* Carter, No. 13 C 5037 (N.D. Ill.). Based on the Court's experience in these cases, Plaintiff is an extremely bright and litigious individual

who could have easily conducted the necessary discovery regarding the John Doe medical Defendants if he so desired.[1]

## III. Conclusion

For the reasons set forth above, Plaintiff's motion for summary judgment [130] is denied, and Defendants Michael P. Randle, Marcus Hardy, Anthony Ramos, Margaret Thomas, and Jackie Miller's cross motion for summary judgment [134] is granted. The John or Jane Doe Defendants are dismissed because Plaintiff failed to identify and name them within the two-year statute of limitations period despite the Court's warning. The remaining Defendant IDOC is dismissed because the State of Illinois is not a person amenable to suit under 42 U.S.C. § 1983 and has sovereign immunity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66-70 (1989); *Thomas v. Illinois*, 697 F.3d 612, 613 (2012). Because the claims against all remaining Defendants have been resolved, the Clerk is instructed to enter a Rule 58 Judgment in favor of Defendants Randle, Hardy, Ramos, Thompson, and Miller. Defendants Doe and IDOC are dismissed and this civil case is terminated.

If Plaintiff wishes to appeal this final order, he may file a notice of appeal with this Court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the full amount of

---

[1] Plaintiff brought only one motion in this case for the Court to recruit him counsel [55], which the Court denied without prejudice. [65]. The Court denied the motion because Plaintiff failed to demonstrate that he had attempted to obtain his own counsel in the first instance, and allowed him the opportunity to renew his motion once making the effort. [65]; see also *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (en banc) (instructing that indigent Plaintiff must make "a reasonable attempt to obtain counsel or been effectively precluded from doing so" before the Court may recruit counsel for him). Plaintiff did not submit a renewed motion. Plaintiff's sole motion did not make any mention of the John Doe issue or any difficulty that he experienced in attempting to conduct discovery to identify the Doe Defendants.

the appellate filing fee irrespective of the outcome of the appeal. *Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). Furthermore, if the appeal is found to be non-meritorious, Plaintiff may also be assessed a "strike" under 28 U.S.C. § 1915(g). Plaintiff is warned that, pursuant to that statute, if a prisoner has had a total of three federal cases or appeals dismissed as frivolous, malicious, or failing to state a claim, he may not file suit in federal court without prepaying the filing fee unless he is in imminent danger of serious physical injury. *Id.*

Dated: September 10, 2013

_____
Robert M. Dow, Jr.
United States District